[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Jose Gonzalez, the minor child who is the subject of the present motion, was born on August 30, 1989 in Hartford, to the plaintiff mother, Ervaris Rivera. In April 1991 the defendant executed an acknowledgment of paternity stating under oath that he is Jose's father. The plaintiff signed an affirmation under oath a few days later naming the defendant as Jose's father. These documents, together with a signed advisement of rights and information form, were filed forthwith in this court. Pursuant to General Statutes § 46b-172 the foregoing documents have the same force and effect as a paternity judgment.
In August of the same year, the State of Connecticut commenced an application to show cause why a support order should not enter. The show cause application names one Felicita Rivera as a second party co-plaintiff, alleging her to be the "caretaker" of the child. All three parties appeared before the court, Keller, F.S.M., who entered a support order of $62.00 per week plus $5.00 per week on the arrearage.[1] There has been little enforcement activity in the file since the order was established.
On April 27, 2001 the defendant filed a motion to open the paternity judgment alleging that he had "reason to believe Jose Luis Gonzalez is not my son." The motion was served only on Felicita Rivera. The court declined to hear the motion until the defendant also served the motion upon Ervaris Rivera and upon the Attorney General. The court appointed Attorney Christopher Cobb as attorney and guardian ad litem for the child Jose. Rather than amend his motion and serve the additional parties, the defendant attempted a new motion, but he failed to return this motion to the court. On August 30, 2001 the defendant withdrew the motion.
The present motion was filed on February 19, 2002. The return of service indicates abode service upon Ervaris Rivera but does not indicate service upon the co-plaintiff Felicita Rivera. The court nonetheless CT Page 11544 allowed the hearing to go forward. Attorney Cobb was again appointed to represent the interests of the minor child.
The defendant's motion states: "Requesting D.N.A. testing to prove I am not the biological father of Jose Luis Gonzalez. Mother and child know who the biological father is." The defendant claims that when he acknowledged Jose, "nobody knew who was the father of the child." He claims that he agreed to stand as the child's father until the biological father appeared. He claims that now the true biological father has come forth, and that the parties want to make him the legal father. The Attorney General and the attorney for the child oppose the motion.
 I — JURISDICTION
The defendant's motion specifically seeks a court order for a paternity test. The plaintiff mother does not oppose this. General Statutes §46b-168 provides for court-ordered DNA testing when "the question of paternity is at issue". However, our Appellate Court has held that where a paternity judgment exists the court lacks the authority to order genetic tests unless the judgment is first opened. Cardona v. Negron,53 Conn. App. 152, 157, 728 A.2d 1150 (1999); Anderson v. Bailey, 15 S.M.D. ___ (Burt, F.S.M., Feb. 14, 2001).
Earlier cases held that courts lacked subject matter jurisdiction to open a judgment unless the motion was filed within four months. VanMecklenberg v. Pan American World Airways, Inc., 196 Conn. 517, 5118,494 A.2d 549 (1985); Celanese Fiber v. Pic Yarns, Inc., 184 Conn. 461,465, 440 A.2d 159 (1981); Misinonile v. Misinonile, 190 Conn. 132, 134,459 A.2d 518 (1983); Handy v. Minwax Co., Inc., 46 Conn. App. 54, 56,698 A.2d 339 (1997); Ziruk v. Bedard, 45 Conn. App. 137, 139, 695 A.2d 4
(1997); Connecticut National Bank v. Oxenhandler, 30 Conn. App. 541,546-47, 621 A.2d 300, cert. denied, 225 Conn. 924, 625 A.2d 822 (1993). More recent law characterizes the statutory bar as "a limitation on the trial court's general authority to grant relief from a judgment. . . ."Yeong Gil Kim v. Magnotta, 249 Conn. 94, 103, 733 A.2d 809 (1999).
 II — FINALITY OF JUDGMENT
Paternity in this case was established through the paternity acknowledgment statute, General Statutes § 46b-172. The statute provides that when an acknowledgment is executed by the father and filed together with affirmation of the mother it "shall be considered a legal finding of paternity . . . and shall be binding on the person executing the same. . . ." General Statutes § 46b-172 (a)(1). The judgment obtained through the acknowledgment can only be opened within three years CT Page 11545 of filing: "The prior judgment as to paternity shall be res judicata as to that issue for all paternity acknowledgments filed with the court on or after March 1, 1981, but before July 1, 1997, and shall not be reconsidered by the court unless the person seeking review of the acknowledgment petitions the superior court for the judicial district having venue for a hearing on the issue of paternity within three years of such judgment." General Statutes § 46b-172 (c). After the expiration of the statutory period an acknowledgment "may be challenged in court or before a family support magistrate . . . only on the basis of fraud, duress or material mistake of fact which may include evidence that he is not the father, with the burden of proof upon the challenger."[2]
Thus the statute attempts to imbue acknowledged paternity with the same degree of finality as adjudicated paternity judgments. It is well established that "[o]ur courts favor finality in judicial decisions."Meinket v. Levinson, 193 Conn. 110,113, 414 A.2d 454 (1984); Vogel v.Vogel, 178 Conn. 358, 362, 422 A.2d 271 (1979); Perkins v. Perkins,3 Conn. App. 322, 328, 487 A.2d 1117 (1985); Dawkins v. Nash, 15 S.M.D. ___ 7 Conn.Ops. 1302, 2001 Ct. Sup. 14254 (2001); Joseph v. Lilburn, 14 S.M.D. ___ (2000); Tirado v. Rivera, 13 S.M.D. 230, 238,1999 Ct. Sup. 15638 (1999); Yade v. Nagy, 4 S.M.D. 237 (1990); State ofFlorida v. Backlund, 2 S.M.D. 61, 71 (1988). "Public policy requires that a term be put to litigation and the judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. . . ." Lampson Lumber Co. v. Hoer, 139 Conn. 294, 297,93 A.2d 143 (1952); Drakeford v. Ward, 15 S.M.D. ___ 2001 Ct. Sup. 15865
(2001); White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365,2000 Ct. Sup. 6486 (2000); Pullen v. Cox, 9 S.M.D. 134, 137 (1995).
"The finality of judgment in family matters is crucial to our community's stability." Berry v. Berry, Superior Court, judicial district of Hartford/New Britain at Hartford, doc. no. FA91-0391459,1993 Ct. Sup. 22 (Steinberg, J. January 5, 1993); Valentin v. Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001); Joseph v. Lilburn, 14 S.M.D. ___ (2000). "The need for finality of judgment . . . must apply as much or more to cases where a young child for whom the passage of time which may seem short for an adult or teenager, can be almost an eternity to an infant, and work changes with substantial and irreversible effect."In re Kelly S., Superior Court, juvenile matters, judicial district of Windham at Willimantic, doc. no. N90-159, 1991 Ct. Sup. 10450, 10464 (Teller, J. Dec. 5, 1991); In re Nathan and Michael G., Superior Court, juvenile matters, judicial district of Windham at Willimantic,1993 Ct. Sup. 9953, 9967 (Brenneman, J. Nov. 17, 1993); In re Mark andAmy C., Superior Court, juvenile matters, judicial district of New London at Montvilie, 1991 Ct. Sup. 7960, 10464 (R. Walsh, J. Sept. 24, 1991); CT Page 11546In re Jesus Lugo, Superior Court, juvenile matters, judicial district of Hartford/New Britain at Plainville, 1990 Ct. Sup. 878, 887 (Brenneman,J. Aug. 24, 1990); Valentin v. Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001).
This motion to open was filed almost eleven years after the acknowledgment was signed. This is well beyond the time bar in the statute. "Therefore the court does not have the authority to grant the motion absent proof by the moving party of an extraordinary factor such as fraud, mistake, or duress." Drakeford v. Ward, 15 S.M.D. ___ (Lifshitz, F.S.M., Nov. 7, 2001). Moreover, the file contains a signed information form which includes, inter alia, the following: "If you are not sure you are the father of the child, you do not have to acknowledge paternity. You have the right to refuse to admit paternity and have a trial at which you could be represented by an attorney."
Even if the defendant successfully proves that at least one of the above factors apply, he must overcome countervailing factors such as laches, estoppel and unclean hands. "[O]ne of the essential conditions for granting of such a motion is that the evidence which the party seeks to offer could not have been known and with reasonable diligence produced at trial." Stocking v. Ives, 156 Conn. 70, 73, 238 A.2d 421 (1968);Fedele v. Romero, 37 Conn. Sup. 885, 888, 441 A.2d 867 (1982).
 III — FRAUD
A judgment obtained by fraud may be attacked even after the time limitation for opening the judgment. Kenworthy v. Kenworthy, 180 Conn. 129,131, 429 A.2d 837 (1980); Gatling v. Gatling, Superior Court, judicial district of Waterbury, doc. no. 52272, 1990 Ct. Sup. 801 (Harrigan, J., Aug. 9, 1990); White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365,2000 Ct. Sup. 6486 (2000); Cardona v. Negron, 13 S.M.D. 133, 139 (Matasavage, F.S.M. 1999); McNealy v. Dancy, 13 S.M.D. 107, 114,1999 Ct. Sup. 12793 (1999).
The moving party bears a heavy burden of proof "Fraud must be proven by `clear and satisfactory evidence', a standard more exacting than a fair preponderance of the evidence." Gatling, supra; Dawkins v. Nash, 15 S.M.D. ___, 7 Conn.Ops. 1302 (Colella, F.S.M., Oct. 29, 2001); see alsoAlaimo v. Royer, 188 Conn. 36, 39, 448 A.2d 207 (1982). The standard is also phrased "clear, precise and unequivocal evidence." Weisman v.Kaspar, 233 Conn. 531, 540, 661 A.2d 530 (1995); Connell v. Colwell,214 Conn. 242, 571 A.2d 116 (1990); Alaimo, supra, 39; Lopinto v.Haines, 185 Conn. 527, 534, 441 A.2d 151 (1981); DeLuca v. C.W. Blakeslee Sons, Inc., 174 Conn. 535, 546, 391 A.2d 170 (1978); T.O.CT Page 11547Richardson Co. v. Brockbank, Superior Court, judicial district of Hartford / New Britain at Hartford, doc. no. 703826 (Sheldon, J., March 23, 1995); Pullen v. Cox, 9 S.M.D. 134, 138 (1995).
In order to establish fraud, the moving party must prove that: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act on it; and (4) the other party did so act upon that false representation to his injury." Weisman v. Kaspar, 233 Conn. 531,539, 661 A.2d 530 (1995); Billington v. Billington, 220 Conn. 212, 217,595 A.2d 1377 (1991); Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811
(1981); Paiva v. Vanech Height Construction Co., 159 Conn. 512, 515,271 A.2d 69 (1970); Barnes v. Starr, 64 Conn. 136, 1250, 28 A. 980
(1894); Gatling, supra; Hemingway v. Jones, 15 S.M.D. ___ (Burt, F.S.M., Feb. 16, 2001); Anderson v. Bailey, 15 S.M.D. ___ (Burt, F.S.M., Feb. 14, 2001); Tirado v. Rivera, 13 S.M.D. 230, 239, 1999 Ct. Sup. 15638
(Alvord, F.S.M. 1999); Pullen v. Cox, supra, 9 S.M.D. 138.
Additionally, the judgment may be opened only if the moving party is not barred by any of the following restrictions: "(1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) § 11.7, pp. 540-42; 36 Ill. L. Rev. 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interests of reliance that have taken shape on the basis of the judgment. James Hazard, Civil Procedure (2d Ed.) § 13.14, p. 687." Varley v. Varley, 180 Conn. 1, 4, 428 A.2d 317
(1980); Tirado v. Rivera, 13 S.M.D. 212, 221, 1999 Ct. Sup. 15638
(1999); McNealy v. Dancy, supra, 13 S.M.D. 120; Pullen v. Cox, supra, 138.
The present defendant admits that his signature appears on the acknowledgment and on the advisement of rights form. He admits that he voluntarily signed the forms. He claims that he did so only as an accommodation because "nobody knew who was the father of the child." He insinuates that he did so to prevent the child from being fatherless until the true biological father appeared. In the defendant's view, the "real" father has now surfaced so accordingly he, the defendant, should be relieved from any further obligation.
Even if the defendant's story is taken as entirely truthful, it can be readily seen that he has no basis to claim himself the victim of fraud. CT Page 11548 His claim fails as at least two of the four prongs set forth inBillington and other cited cases. While the defendant may claim that the affirmation accompanying the acknowledgment included a false representation known to be untrue by the plaintiff, he knew of the alleged falsehood at the time. He not only did not take action to expose the alleged untruth, but also colluded with the plaintiff to perpetuate it. As such it is impossible for the defendant to argue that he was induced by the plaintiff to act on her representations. His act in signing the acknowledgment was not based on the plaintiff's alleged false representation but rather on his own voluntary decision to father the child.
Furthermore, the defendant is barred by all four of the Varley factors injury." Laches will be discussed in a separate section. Diligence in trying to discover and expose the fraud was clearly absent: as stated, if anything the defendant colluded in its commission. Furthermore, the defendant has failed to provide clear evidence that there has been a fraud or that the result of the new trial will be different. The defendant has not submitted DNA results to prove that he is not the biological father or that the alternative nominee is. If in fact the plaintiff falsely affirmed the defendant as the father eleven years ago, there is no reason to place any credibility in a contrary accusation now.
 IV — MISTAKE
Mutual mistake has been held to exist where both parties are mutually mistaken about the same material fact. Buol Machine Co. v. Buckens,146 Conn. 639, 641, 153 A.2d 826 (1959); Dainty Rubbish service, Inc. v.Beacon Hill Association, Inc., 32 Conn. App. 530, 537, 630 A.2d 115
(1993); see also Harlach v. Metropolitan Property Liability Ins.Co., 221 Conn. 185, 190, 602 A.2d 1007 (1992). "The court does have jurisdiction to open a stipulated judgment, on a motion, even after the four month period has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident or mistake." Yeong Gil Kim v.Magnotta, 49 Conn. App. 203, 209, 714 A.2d 38 (1998); Solomon v. Keiser,22 Conn. App. 424, 577 A.2d 1103 (1990); McDonnell v. McDonnell, Superior Court, judicial district of Hartford, doc. No. FA94-0535761 (Bishop, J., February 2, 1999).
Although a party moving to open a judgment must "demonstrate that there is a good and compelling reason for the court to grant the motion . . ." the applicable statutes and practice rules ". . . [do] not contain a precise list of what the moving party must show in order to prevail. . . ." First Union National v. TDB International, 22 Conn.LRptr. 252 (1998). CT Page 11549 A motion to open "is not to be granted readily, nor without strong reasons, it may and ought to be when there appears cause for which the court, acting reasonably would feel . . . bound in duty to do so."McCulloch v. Pittsburgh Plate Glass Co., 107 Conn. 164, 167, 140 A. 114
(1927); Wildman v. Wildman, 72 Conn. 262, 270, 44 A. 224 (1899); Valentinv. Olivero, 15 S.M.D. ___ (Alvord, F.S.M., June 11, 2001). "There is no bright line standard as to what constitutes a `mistake' sufficient to confer jurisdiction on a court to open a judgment after four months."McNealy v. Dancy, 13 S.M.D. 107, 118, 1999 Ct. Sup. 12793 (1999).
The language of the paternity acknowledgment statue as amended in recent years is instructive in determining what constitutes a "mistake". The statute includes "evidence that he is not the father" as a "material mistake of fact". There is no requirement of "mutual mistake". The material mistake can be mutual or unilateral. It is also significant that the clause is preceded by the word "may". Thus the amendment still does not create a bright line standard but merely allows the court to consider evidence of non-paternity among other factors.
It is difficult to regard the signing of the acknowledgment to be a "mistake" even given the defendant's version of the events. It cannot be considered a mistake when the plaintiff and the defendant both intended the consequences of their act, namely that the defendant would be established as the child's legal father. Their intentions could hardly be more clear in their choice of the child's name. He not only bears the defendant's surname but also his given name.
Even if the acknowledgment could be viewed as a mistake, the parties had ample opportunity within the statutory period to rectify the error. The State did not delay in bringing support proceedings before the court. Both the plaintiff mother and the defendant were present in court in September 1991 when the support order was set. Neither took action to open or rescind The court does not find mistake to be an appropriate basis to open this judgment.
 V — DURESS
The principles that govern the opening of a stipulated judgment on the ground of duress are not in dispute. Our law vests discretion in the trial court to determine whether a judgment should be opened for cause. "To conclude that a stipulated judgment resulted from duress, the finder of fact must determine that the misconduct of one party induced the party seeking to avoid the stipulated judgment to manifest assent thereto, not as an exercise of that party's free will but because that party had no reasonable alternative in light of the circumstances as that party CT Page 11550 perceived them to be. See McCarthy v. Taniska, 84 Conn. 377, 381-82,80 A. 84 (1911); 1 Restatement (Second), Contracts § 175, especially comment b (1981)." Jenks v. Jenks, 232 Conn. 750, 753, 657 A.2d 1107
(1995); Sicaras v. City of Hartford, 44 Conn. App. 771, 789, 692 A.2d 1290
(1997); Morales v. Rios, 15 S.M.D. ___, 2001 Ct. Sup. 1380 (2001).
The classical or common law definition of duress is "any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition." 25 Am.Jur.2d., Duress and Undue Influence 1 (1966). Inherent in the term is an implication of feebleness on one side and overpowering strength on the other. United States v.Bethlehem Steel Corp., 315 U.S. 289, 300, 62 S.Ct. 581, 86 L.Ed. 853
(1941). The duress must be imposed on the defendant at or about the time the defendant enters into the contract. 25 Am.Jur.2d, Duress and Undue Influence 14; see Shlensky v. Shlensky, 369 Ill. 179, 183, 15 N.E.2d 694
(1938). To show duress, one must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. 2 D. Dobbs, Law of Remedies (2d Ed. 1993) c. 10, § 10.2(1), p. 635.
There is no evidence that the plaintiff did threatened the defendant. She did not tell him that he must sign the form. The defendant does not allege that he felt "pressured" to sign the form as did the defendat inMorales v. Rios, 15 S.M.D. ___, 2001 Ct. Sup. 1380 (2001). The defendant does not deny that he read and understood the acknowledgment and the information form which includes clear warning that the document is legally binding. The defendant clearly understood that he was not compelled to sign the form, but that by doing so he waived his rights to contest the paternity. "A stipulated judgment . . . is not voidable on the ground that it was accepted with reluctance, so long as its procurement was not the result of fraud, duress, or mistake." Sparaco v.Tenney, 175 Conn. 436, 437-38, 399 A.2d 1261 (1978); Bryan v. Reynolds,143 Conn. 456, 460-61, 123 A.2d 192 (1956); Shaw v. Spelke, 110 Conn. 208,215, 147 A. 675 (1929).
The defendant has failed to prove any of the elements of duress. There was no wrongful act or threat by the plaintiff. He was not placed in a position of having no reasonable alternative. He was not placed at an unfair disadvantage or deprived of his free will. To the contrary he could have walked away at any time, or simply declined to sign. Instead, he willingly participated.
 VI — LACHES CT Page 11551
The defendant "had ample opportunity to raise the paternity issue, if he so chose, within the statutory time, and incidentally at a time less prejudicial to the State and [the child]." Pullen v. Cox, 9 S.M.D. 134, 144 (1995); Angelus v. Angelus, 20 Conn.L.Rptr. 252 (1997); Perkins v.Perkins, 3 Conn. App. 322, 487 A.2d 1117 (1985). "Whether the issue `was actually litigated is immaterial in view of the necessary conclusion that there was full opportunity to litigate it and that it was adjudicated by the decree.' Jackson v. Irving Trust Co., 311 U.S. 494, 503,61 S.Ct. 326,85 L.Ed. 297 (1941)." Perkins, supra, 3 Conn. App. 327. See alsoPagani v. Davis, Superior Court, judicial district of Hartford / New Britain at Hartford, doc. no. 602649 (Kaplan, J., July 18, 1991);Bleidner v. Searles, 19 Conn. App. 76, 561 A.2d 954 (1989); White v.Cordier, 14 S.M.D. ___ 27 Conn.L.Rptr. 365 (2000).
"Laches consists of an inexcusable delay which prejudices the defendant." Bozzi v. Bozzi, 177 Conn. 232, 239, 413 A.2d 834 (1979);Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685, 116 A.2d 906 (1955);Brock v. Cavanaugh, 1 Conn.App, 138, 140, 468 A.2d 1242 (1984); Lowndsv. Lownds, 41 Conn. Sup. 100, 551 A.2d 775 (1988); Lynk v. Lynk, 11 S.M.D. 233, 235; Thomas v. Ah Tau Ah Nee, 8 S.M.D. 135, 139 (1994);Samatowitz v. Samatowitz, 4 S.M.D. 30 (1990). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . The mere lapse of time does not constitute laches . . . unless it results in prejudice to the defendant . . . as where, for example, the defendant is led to change his position with respect to the matter in question." (Citations omitted; internal quotation marks omitted.) Papcun v. Papcun,181 Conn. 618, 620-21, 436 A.2d 282 (1980).
It is apparent that even after the acknowledgment was filed, the defendant had ample opportunity to raise the issue of paternity. He did not exercise reasonable diligence in pursuing such opportunities. His delay was not excusable and did prejudice the interests of the child and the state. Castonguay v. Plourde, 46 Conn. App. 251, 265, 699 A.2d 226, cert. denied 243 Conn. 931, 701 A.2d 660 (1997); White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365, 2000 Ct. Sup. 6486 (2000); Joseph v.Lilburn, 14 S.M.D. ___ (2000). The defendant is barred from opening the paternity acknowledgment by laches.
 VII — THE INTEREST OF THE STATE OF CONNECTICUT
"There is no doubt that the State of Connecticut has an interest which would be prejudiced by opening the judgment." White v. Cordier, 14 S.M.D. ___, 27 Conn.L.Rptr. 365 (2000); McNealy v. Dancy, 13 S.M.D. 113, 115, 1999 Ct. Sup. 12793, 12795 (sub nom. Tiffany M. v. Walter D.) CT Page 11552 (1999). "The State's financial interest is not the determining factor but one of many the court must analyze." Joseph v. Lilburn, 14 S.M.D. ___ (2000).
The State has incurred direct out-of-pocket cost of public assistance paid on behalf of the child Jose Gonzalez. If the judgment is opened the State will be required to refund any money it collected though the support order. General Statutes § 46b-172 (c). Liability for past due support against any subsequently named putative father is limited to three years prior to the commencement of the new paternity case. In addition to its own direct fiscal interest, Connecticut "evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209, 662 A.2d 107
(1995).
 VIII — THE INDEPENDENT INTEREST OF THE CHILD
Connecticut has long recognized that children have a separate and independent interest in family relations matters. In re Bruce R.,234 Conn. 209-210; Nye v. Marcus, 198 Conn. 138, 502 A.2d 869 (1985);Guille v. Guile, 196 Conn. 260, 492 A.2d 175 (1985); Salvio v. Salvio,186 Conn. 311, 441 A.2d 190 (1982); Yontef v. Yontef, 185 Conn. 275,440 A.2d 899 (1981). A child's "interest in establishing paternity is a fundamental state and federal constitutional liberty interest [which] the judicial system must afford the child an opportunity to exercise and protect. . . ." Andrews-White v. Mitchell, 15 Conn.L.Rptr. 629,1995 Ct. Sup. 12880 (McWeeny, J. Nov. 13, 1995); Taylor v. Martin, 14 S.M.D. ___ 26 Conn.L.Rptr. 404 (2000). "It can no longer be disputed that the minor child . . . has a separate and distinct interest in the outcome of this motion." Pullen v. Cox, 9 S.M.D. 134, 145 (1995). Our Supreme Court has held that minor children even may appeal an order regarding their own support in the absence of a guardian ad litem, if the trial court finds that it is in their best interests to do so. Newman v.Newman, 235 Conn. 82, 663 A.2d 980 (1995).
The right of the child to knowledge of his parentage among the factors to be weighed in opening a judgment. In Johnson v. Domina, Superior Court, Judicial District of Hartford, doc. No. FA88-0340848,1998 Ct. Sup. 11005 (Sep. 24, 1998) the court, Dranginis, J., held "that the right of the child to knowledge and establishment of paternity supercedes any interest the court might have in preserving a judgment entered by default, and where clear and convincing evidence of fraud on the court is present. . . . This child's interest m preserving rights which grow from the biological father must take precedence even over a ten year old judgment of the court." CT Page 11553
One month later, in a similar situation, Judge Dranginis opened a nine year old dissolution judgment for DNA testing. "This court has ruled that the right of the child to a conclusive determination of paternity supersedes the need for finality of judgments, and the ease with which a confirming test of paternity can now be determined, requires a conclusive finding of paternity. This child has been told that there is doubt as to her paternity. The child has a right to know for sure whether or not the defendant in this case, who she has known as her father, is indeed her father. Her property rights are at interest here, and the ability of the parties to ascertain their responsibilities conclusively, so as to further minimize conflict over such a delicate issue, is of primary concern for the long-term well being of this child. When a debate over paternity occurs post-judgment (sic), and there is evidence of sexual infidelity which creates a doubt as to paternity, it is incumbent upon the parents to use scientific evidence to conclude the debate, and have closure for the family." Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (October 21, 1998).
It is not uniformly accepted that the interest of a minor child in determining his parentage categorically trumps traditional concern for finality of judgment. Evidence of non-paternity even as strong as an exclusionary DNA test does not always establish a material mistake sufficient to open a paternity judgment. For example, in subsequent proceedings in the Lillibridge case, DNA testing excluded the defendant as the father of one of the two children of the marriage. The defendant then med a "motion to modify/terminate support" which "by stipulation of the parties the court [treated] as a motion to reopen and modify judgment regarding child support." In an eleven page memorandum, the court,Devine, J., held that notwithstanding the exclusion by DNA, the defendant had not sustained his burden of proof. The court found that the defendant knew of the infidelity of his wife well before the dissolution but failed to pursue available paternity testing and continued to hold himself out as the child's father. Lillibridge v. Lillibridge, Superior Court, Judicial District of Hartford, doc. No. FA89-0356816 (June 1, 1999).
The court places substantial weight on the opinion of the child's counsel and guardian ad litem. Morales v. Rios, 15 S.M.D. ___,2001 Ct. Sup. 1380 (2001). Here the guardian ad litem strongly opposes opening the judgment. This thirteen-year-old child knows only the defendant as his father. Notwithstanding representations to the contrary, there is no guaranty that if the court grants this motion, that anyone will be subsequently determined as Jose's father.
The defendant's principal contribution to his son has been his child CT Page 11554 support payments. Financial support is linked to the best interests of a minor child. "Connecticut child support enforcement legislation clearly evinces a strong state policy of ensuring that minor children receive the support to which they are entitled." In re Bruce R., 234 Conn. 194, 209,662 A.2d 107 (1995). Support is one of the best interest considerations the court must consider. Id., 210-12; In re Jessica M., 47 Conn. Sup. 42,51, 774 A.2d 1097 (2001) In Interest of K.J.K., 396 N.W.2d 370. 371-72 (Iowa App. 1986); In Interest of A.B., 151 Wis.2d 312, 322, 444 N.W.2d 415
(Wis.App. 1989).
The issue of child support is clearly a motivating factor to the defendant. While clothing his intentions under the guise of correcting a previous error, it is clear that his primarily motivation is to get out of paying child support.
 IX — CONCLUSION
In view of the absence of clear evidence of fraud, duress or mistake and the failure of the defendant to exercise reasonable diligence, the defendant's attack on this judgment cannot succeed. Furthermore, the child's best interests are served by denying the motion. Accordingly, the motion to open the judgment is hereby denied.
BY THE COURT
 Harris T. Lifshitz Family Support Magistrate